VIRGINIA:



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

COMMERCIAL ONE ELECTRICAL CONTRACTORS, INC., )
                                       )
                   Plaintiff, )
                                        )
v.                                          )
                                        )
TRANE U.S. INC.,                            )
Please Serve:  Commonwealth Legal     )
                  Services Corporation, Reg. Agent )
                  4701 Cox Rd,  Ste 301          )
                  Glen Allen, VA  23060-6802     )
                  (County of Henrico)           )
                                          )
GILBANE BUILDING COMPANY OF RHODE ISLAND )
t/a GILBANE BUILDING CO.,            )
Please Serve:  Commonwealth Legal     )
                  Services Corporation, Reg. Agent )
                  4701 Cox Rd,  Ste 301          )
                  Glen Allen, VA  23060-6802     )
                  (County of Henrico)           )
                                          )
                  CT Corporation System, Reg. Agent )
                  Services Corporation, Reg. Agent )
                  4701 Cox Rd,  Ste 301          )
                  Glen Allen, VA  23060-6802     )
                  (County of Henrico)           )
                                          )
TRAVELERS CASUALTY AND SURETY     )
COMPANY OF AMERICA,              )
Please Serve: Corporation Service Company )
                  Bank of America Center, 16th Floor )
                  1111 East Main Street        )
                  Richmond, VA 23219-0000      )
                  (City of Richmond)            )

Case No. 3:12CV888
TRIAL BY JURY IS
DEMANDED

1

URBAN GRID SOLAR, INC.,                                          )
Please Serve:  Greg Crump a/k/a Blue Crump,                      )
               Director, Registered Agent                        )
               3310 W Clay St                                    )
               Richmond, VA  23230-0000                          )
               (City of Richmond)                                )
AND                                                              )
                                                                 )
LEXON INSURANCE COMPANY,                                         )
Please Serve: Corporation Service Company                        )
              Bank of America Center, 16th Floor                 )
              1111 East Main Street                              )
              Richmond, VA 23219-0000                            )
              (City of Richmond)                                 )
                                                                 )
                              Defendants.                        )

## COMPLAINT

COMES NOW the Plaintiff, Commercial One Electrical Contractors, Inc., by counsel, for

its Complaint, against Trane U.S. Inc., Gilbane Building Company of Rhode Island t/a Gilbane

Building Co., Travelers Casualty and Surety Company of America, Urban Grid Solar, Inc.,  and

Lexon Insurance Company for the reasons and amounts as set forth below; and in support thereof

states as follows:

### *Parties*

1.     At all times relevant herein, Commercial One Electrical Contractors, Inc.

("Commercial One"), plaintiff, was a Virginia corporation organized and existing under the laws

of the Commonwealth of Virginia with its principal place of business located in the City of

Richmond, Virginia.

2.     At all times relevant herein, Jeffon T. Neal (hereinafter "Neal") was the Director,

2

as well as sole officer and shareholder of Commercial One.

3. At all times relevant herein, Neal was an African American, who is a master electrician with 20 years of experience, and sole owner of Commercial One. Commercial One is a small, minority owned business, being owned and operated by an African American master electrician and having no more than one (1) full time staff except when additional staffing is needed for projects.

4. At all times relevant herein, Trane U.S. Inc. (hereinafter "Trane") was believed to be a Delaware Corporation that engaged in construction within the Commonwealth of Virginia and contracted in the Commonwealth of Virginia with the Commonwealth of Virginia, Department of General Services (hereinafter "DGS") in the amount of $4,272,059.00 for construction services on the construction project entitled "Installation: Photovoltaic Panels on Various Buildings" (hereinafter "the Project") which included but was not limited to the installation of photovoltaic panels on the buildings owned by the Commonwealth of Virginia in the City of Richmond, Virginia and the County of Chesterfield, Virginia. Exhibit 1-4, Contract between Trane U.S. Inc. and the Commonwealth of Virginia.

5. At all times relevant herein, Gilbane Building Company of Rhode Island t/a Gilbane Building Co. (hereinafter "Gilbane") was believed to be a Rhode Island Corporation that contracted in the Commonwealth of Virginia and/or otherwise worked as Trane's construction manager and/or construction consultant on the Project

6. At all times relevant herein, Travelers Casualty and Surety Company of America (hereinafter "Travelers") was believed to be a Connecticut corporation, a Surety Company, and wrote a bond in the amount of $3,145,000.00 for Gilbane upon information and belief at the time

3

Gilbane entered into contract for construction work in the Commonwealth of Virginia and/or was hired by Trane to work on the Project. Exhibit 5, Travelers Payment Bond.

7.    At all times relevant herein, Urban Grid Solar, Inc. (hereinafter "Urban Grid") was believed to be a Virginia corporation, that entered into contract with Gilbane and/or Trane for the installation of photovoltaic panels on the Project and in particular the portions of the Project known as Virginia Distribution Center & 14th Street in the City of Richmond and Chesterfield County, Virginia.

8.    At all times relevant herein, Lexon Insurance Company (hereinafter Lexon Ins") was believed to be a Texas corporation, a Surety Company, that wrote a bond in the amount of $720,000.00 for Urban Grid for construction in the Commonwealth of Virginia at the time it entered into contract and/or was hired by Gilbane and/or Trane to work on the Project. Exhibit 6, Lexon Ins Payment Bond.

### *Jurisdiction*

9.    *In personam* jurisdiction is proper in this matter for contract, statutory and common-law matters under *Code of Virginia §8.01-328.1* (1950 amended).

10.   Commercial One also invokes this Court's jurisdiction over Trane, Gilbane, and Urban Grid  under *42 U.S.C. §1981.*

### *Venue*

11.   Trane contracted and is believed to have performed construction located within the boundaries of this judicial district at all times relevant herein, and the incident giving rise to this cause of action took place within the boundaries of the City of Richmond and/or the County of Chesterfield, Virginia.

4

12.     Gilbane contracted and is believed to have performed construction located within the boundaries of this judicial district at all times relevant herein, and the incident giving rise to this cause of action took place within the boundaries of the City of Richmond and/or the County fo Chesterfield, Virginia.

13.     Urban Grid performed construction work, resided in, and/or was located within the boundaries of this judicial district at all times relevant herein, and the incident giving rise to this cause of action took place within the boundaries of the City of Richmond and/or County of Chesterfield.

14.     Travelers and Lexon Ins both engage registered agents that have their offices in the City of Richmond, Virginia, and provided bonds as surety companies for construction performed in the City of Richmond and/or Chesterfield County, Virginia.

15.     Venue is proper in the United States District Court for the Eastern District of Virginia pursuant to *28 U.S.C. §1391.*

### *Facts*

16.     On or about January 15, 2010, Trane and the Commonwealth of Virginia contracted for the installation of Photovoltaic Panels on Various Buildings, previously termed the Project, which included the installation of photovoltaic panels at the Virginia Distribution Center (hereinafter "VDC") and 14th Street Parking Deck (hereinafter "14th Street"). Exhibit 1, Comprehensive Agreement, Exhibit 2, Contract Between Owner and Design Build Contractor, Exhibit 3, Contractor's Proposal, & Exhibit 4, Special Conditions to the Design Build Contract (hereinafter collectively "Exh 1-4, Contract Documents").

17.     Trane entered into the contract with the Commonwealth of Virginia under the

Public-Private Education Facilities and Infrastructure Act of 2002 as set forth in Code of Virginia 56-575.16(4) and sometimes referred to as the PPEA which provisions were incorporated into the General Conditions of the Design-Build Contract. Exhibit 1, Comprehensive Agreement, ¶2

18.     Trane posted a payment bond with SAFECO as the surety pursuant to the Contract Documents. Exhibit 1, Comprehensive Agreement ¶15; Exhibit 7, Trane Payment Bond.

19.     At all times relevant herein, SAFECO Insurance Company of America (hereinafter "SAFECO") was believed to be a New Hampshire corporation, a Surety Company, and is believed to have written a bond in the amount of $4,272,059.00 for Trane at the time it entered into the contract for the Project with the Commonwealth of Virginia.

20.     Trane hired Gilbane as its project manager and/or project consultant and/or construction manager/consultant.

21.     Gilbane posted a payment bond with Travelers as the Surety, upon information and belief either as required by contract with Trane or as allowed under the Contract Documents. Exhibit 1, Comprehensive Agreement ¶15; Exhibit 5, Gilbane Payment Bond.

22.     At all times relevant herein, Gilbane managed the construction at VDC and 14th Street, including without limitation hiring subsubcontractors and approving the use of lower tier contractors to supply material and labor for the installation of photovoltaic cells on the Project.

23.     Gilbane entered into a contract with Urban Grid to install photovoltaic cells at VDC and 14th Street.

24.     Urban Grid posted a payment bond with Lexon Insurance as surety to secure its work installing photovoltaic cells at VDC and 14th Street.

25.     Urban Grid contracted Commercial One, a small, minority owned business to

6

perform the electrical work at VDC and 14th Street.  Exhibit 9, Urban Grid Contract with Commercial One for 14th Street; Exhibit 8, Urban Grid Contract with Commercial One for VDC.

26.     Commercial One specified the labor and materials for the installation of the photovoltaic cells for 14th Street and VDC, which were accepted by Trane's project architect, Moseley Architects, via approval of the Submittals.  Exhibit 10, Moseley Architects Approval of Commercial One's Submittals.  Exhibit 9, Commercial One Approved Submittals.

27.     Trane indicated its acceptance of Commercial One's specifications and proposed work on 14th Street and VDC by Moseley Architects' approval of Commercial One's Submittals. Exhibit 1, Comprehensive Agreement, General Conditions, ¶24. Exhibit 10, Commercial One Approved Submittals.

28.     As such, Commercial One was required to perform its labor and provide its materials in conformance with said Submittals.  Exhibit 1, Comprehensive Agreement, General Conditions, ¶24

29.     Commercial One through itself and Neal secured financing to prepurchase the materials and pay for the labor for its work at 14th Street and VDC.

30.     Commercial One fully performed its labor, staffing up with qualified employees, and provided its materials in accordance with submittals approved by Trane, Gilbane, Urban Grid and/or Moseley Architects.

31.     After Commercial One submitted its work and/or its work was substantially completed, Moseley Architects issued a Field Clarification changing the type of Exposed Conduit and changing the compression type fittings to watertight, which completely changed the materials submitted and approved by Moseley Architects previously and which had already been

7

incorporated into the VDC and 14th Street work. Exhibit 11, Field Clarification.

32. Trane, Gilbane, and Urban Grid required Commercial One to purchase additional materials and provide additional labor to install the EMT exposed conduit and compression type fittings in accordance with the Field Clarification from Moseley Architects despite the work having been done or in the alternative substantially completed in accordance with the original Submittals.

33. Commercial One performed this rework and additional work, for which it provided Change Orders. Exhibit 12, Commercial One Change Orders.

34. Urban Grid, Gilbane, and Trane accepted Commercial One's work and rework.

35. Trane received payment in full from the Commonwealth of Virginia and thus Commercial One's work at VDC and 14th Street was accepted in full by the Commonwealth of Virginia.

36. Commercial One fully performed under its contracts with Urban Grid at the Project.

37. Commercial One last performed work on the Project on April 12, 2012 dealing with a disconnect issue which required labor and materials.

38. Commercial One performed its first contract on a state-owned construction project when working on the Project.

39. Commercial One secured financing through the City of Richmond, Virginia Economic Development Authority to allow it to pre-purchase both labor and materials to perform its work on the Project pending payment.

40. Commercial One is the only subcontractor on the Project who has not been paid in

full or otherwise had its claims resolved.

41.     Commercial One is the only small, minority, i.e. African American, owned business not paid in full as claimed by it on the Project and/or paid in full as claimed by it.

42.     Upon information and belief, Commercial One is the only small, minority, i.e. African American, owned business that performed substantial work on the Project.

### Count 1 - 42 U.S.C. §1981 - Trane U.S. Inc.

43.     Commercial One incorporates paragraphs 1-42 as if fully set forth herein.

44.     Commercial One is entitled to equal rights under the law and in particular the right to make and enforce contracts, to sue, be parties, give evidence, and to the full extent of the laws and proceeding for the security of persons and property as is enjoyed by white citizens as more fully set forth in *42 U.S.C. §1981.*

45.     Commercial One is entitled to make, perform, modify and terminate contracts and enjoy all of the benefits, privilege terms, and conditions of a contractual relationship. *42 U.S.C. §1981.*

46.     Commercial One is entitled to these rights during contract and thereafter.

47.     Trane intentionally discriminated against Commercial One based on race, including without limitation the following regarding Commercial One, its status as a SWaM, an African American owned company, and/or African American company.

48.     Trane's discrimination interfered with Commercial One's right to contract as secured by *42 U.S.C. §1981.*

49.     As a lower tier subcontractor and materialman to Trane, Commercial One as a small, minority owned subcontractor was entitled to the benefit of contractual provisions

designed to allow the Commonwealth of Virginia to review the participation and payment of small, women, and minority owned business (hereinafter referred to as "SWaM") on the Project.

50.     Trane failed to fulfill these contractual duties to the Commonwealth of Virginia and to Commercial One, including but not limited to the following:

a.      Trane contracted that it would provide to the Commonwealth of Virginia a summary of activities each month listing the total dollar of work contracted, committed, and projected to be performed by SWaM businesses, and the total dollar amounts paid to date to SWaM business by itself, and its subDevelopers, to include Gilbane and Urban Grid, separately broken out as small, women, and minority owned businesses. Exhibit 1 - Comprehensive Agreement ¶21(g)(i), (g)(i)(v) & g(i)(vi).

b.      Trane failed to provide any of these reports to the Commonwealth of Virginia. Exhibit 13 - Freedom of Information Act Response from Commonwealth of Virginia.

c.      Trane was to execute and deliver a Certificate of Completion, Form Co-13.2 and Affidavit of Payment of Claims - Form CO-13 stating that all Subcontractors and Suppliers of either labor or materials have been paid all sums claimed by them for Worker performed or materials furnished in connection with the Project less retainage. Exhibit 1, Comprehensive General Agreement, General Conditions of the Design Build Contract ¶36(f);

d.      Trane received payment for the project without submitting an Affidavit of

10

Payment of Claims - Form CO-13 until November 1, 2012, which upon

information and belief indicates that Trane received payment prior to filing

the Affidavit of Payment of Claims form which was a precondition to

payment under its contract with the Commonwealth of Virginia, Exhibit

14, Affidavit of Payment of Claims Form;

e.    On November 1, 2012, Trane indicated in its Affidavit of Payment of

Claims form that all suppliers of labor and material were paid or

arrangements have been made by Trane to satisfy such subcontractors with

respect to payment of sums as may be due them by contractor, yet Gilbane,

Trane's *de facto* agent, construction manager, and/or apparent agent told

the Office of the Governor on July 12, 2012 that Gilbane agreed with

Urban Grid that Urban Grid was to pay Commercial One, meaning

Gilbane and thus Trane knew Commercial One was not paid as it claimed

it was due.  Exhibit 14, Gilbane E-Mail of July 12, 2012 to Office of

Governor;

f.    Trane wrongly believed that settling by and through Gilbane for offsetting

costs and a walk away somehow is an arrangement to satisfy payment of

Commercial One.

g.    Trane executed these documents despite knowledge to itself or its *de facto*

agent, Gilbane, that Commercial One was unpaid and/or unpaid as claimed

by Commercial One;

h.    In the alternative, Trane executed these documents knowing or should of

11

having known that Commercial One was unpaid and/or unpaid as claimed by Commercial One;

i.    Upon information and belief, Trane was paid in full by the Commonwealth of Virginia on the Project;

j.    Trane was obligated under its contract with the Commonwealth of Virginia to cause all subcontractors to include a contract term requiring that all lower tier subcontractors like Commercial One be paid within seven (7) days of receipt of monies from the Commonwealth of Virginia or provide notice to said lower tier Subcontractor or supplier the reason for withholding monies. Exhibit 1, Comprehensive General Agreement, General Conditions of the Design Build Contract ¶37;

k.    Trane was required to cause this clause to be included in each of the subcontracts, Exhibit 1, Comprehensive General Agreement, General Conditions of the Design Build Contract ¶37(c);

l.    Trane did not pay, itself or through its agents and/or subcontractors, Commercial One and the same did not provide notice to Commercial One as should have been contracted and done;

m.    Moreover, Trane was required as follows: "[i]f all Subcontractors and Suppliers of labor and materials have not been paid the full amount claimed by them, the Contractor [Trane] shall list each to which an agreed amount of money is due or which has a claim in dispute." Exhibit 1, Comprehensive General Agreement, General Conditions of the Design

Build Contract ¶36(f);

n.    Upon information and belief, Trane did not and has not notified the Commonwealth of Virginia that Trane did not secure payment for Commercial One instead erroneously considering this matter to be an issue to be resolved by Urban Grid only.

51.    Commercial One states that as a SWaM on the Project and a Subcontractor as well as Supplier of Materials that it is a third party beneficiary of any and all contract provisions between Trane and the Commonwealth of Virginia, including but not limited to having benefits expressly conferred upon it including without limitation the following:

a.    Requirement that payment provisions between the Commonwealth and Trane likewise be between Trane and all subcontractors, Exhibit1, Comprehensive General Agreement, General Conditions of the Design Build Contract ¶¶3(f) & 37;

b.    Requirement of a payment bond for the benefit of subcontractors such as Commercial One, Exhibit 1, Comprehensive General Agreement, General Conditions of the Design Build Contract ¶ 8(b)

c.    Requirement of an Affidavit of Payment and follow along list should a subcontractor or materialman not be paid as the subcontractor/materialman claimed so that the Commonwealth of Virginia may take action to preserve the claim, Exhibit 1, Comprehensive General Agreement, General Conditions of the Design Build Contract ¶36(f); and

d.    Acknowledgment that Trane is liable for all dealings with subcontractors

13

except unless specifically provided by the Contract or by Statute. Exhibit 1, Comprehensive General Agreement, General Conditions of the Design Build Contract ¶8(f).

52.     Commercial One further states that Trane was required by the law of the Commonwealth to provide a payment bond, *Code of Virginia §2.2-4337 (1950 amended)*.

53.     Commercial One believes and therefore states that Moseley Architects made an error with the EMT tubing and compression fittings and issued a field clarification to fix its error after Commercial One had performed all or substantially all of its work in accordance with approved Submittals. Exhibit 11, Trane/Gilbane Building Field Clarification.

54.     On or about May 17, 2012, Gilbane, on behalf of itself and Trane, entered into a settlement agreement whereby Gilbane settled all disputes between itself and Trane on the one hand and Urban Grid on the Project with a final payment in the amount of $35,840.81 as evidenced by a Change Order between Gilbane and Urban Grid and a General Release and Waiver of Liens. Exhibit 15, Settlement Agreement Change Order; Exhibit 16, Urban Grid's General Release and Waiver of Liens.

55.     Upon information and belief, Gilbane settled with Urban Grid in an amount less than the amount contracted between them as evidenced by the payment bond amounts of $55,491.00 and $720,000.00 posted by Urban Grid.

56.     On or before May 17, 2012, Gilbane and thus Trane knew that Urban Grid would not pay Commercial One any monies that Commercial One claimed were due to it.

57.     Commercial One states that Trane, itself and/or by and through its agents, decided to attempt to offload the costs for its project engineer/architects' error onto Urban Grid and thus

14

Commercial One by entering into a settlement agreement with Urban Grid for payment on Urban Grid's contract without allowing for additional change orders for the field clarification, knowing or should have known that Urban Grid would not pay Commercial One for Commercial One's labor and/or material used to perform said field clarification.

58.     Urban Grid did not and has not paid Commercial One in full as claimed by Commercial One.

59.     Nevertheless, Urban Grid admitted to owing Commercial One monies in a meeting with Commercial One and the City of Richmond Economic Development Authority on July 24, 2012 as confirmed by e-mail from Urban Grid to the meeting participants of July 25, 2012. Exhibit 24, Urban Grid E-mail Admitting Owing Monies to Commercial One.

60.     Commercial One disputes the amount that Urban Grid admits that it owes and states that the correct amount is set forth in the accounting and affidavit attached hereto as Exhibit 26.

61.     Trane wrongly believed that settlement between Gilbane and Urban Grid somehow obviated its obligations to report to the Commonwealth of Virginia on its Affidavit of Payment of Claims form and/or list of unpaid claims that Commercial One was not paid in full as claimed by it.

62.     Upon information and belief, Trane has not stated at any time, and/or in the alternative, did not state prior to payment by the Commonwealth of Virginia that Commercial One had not been paid in full as claimed by it.

63.     On or about June 29, 2012, Commercial One contacted Gilbane and stated that more than 70 days had passed since installation, testing, and inspection requirements for its work

and therefore all of its monies were due, including full payment of contract amounts, change orders, and interest. Exhibit 17, Commercial One Demand for Payment and Bonds.

64.     Urban Grid contracted with Commercial One for a 70 day Final Payment provision which was in contravention to Trane's contract with the Commonwealth of Virginia and Urban Grid was to incorporate said agreement into its own contract and/or contracts with Commercial One.

65.     Urban Grid, and thus Gilbane and Trane, knew or should have known of this provision because, upon information and/or belief, Urban Grid supplied its contract and/or contracts with Commercial One to Gilbane and Trane.

66.     Thus, Trane and Gilbane both knew or should have known that this 70 day Final Payment requirement violated the payment provisions necessary in all subcontracts for the Project and would prevent Commercial One, a small, African American subsubsubcontractor from providing effective notice to claim against Gilbane and/or Trane's payment bonds.

67.     On or about June 29, 2012, Commercial One likewise demanded from Gilbane a copy of all bonding insurance regarding Urban Grid, Gilbane, and "any other liable and/or associated entities." Exhibit 17, Commercial One Demand for Payment and Bonds.

68.     On or about July 2, 2012, Gilbane indicated that it had received Commercial One's request for payment and the payment bonds for the Project. Exhibit 18, Gilbane to Commercial One e-mail of July 2, 2012.

69.     In response, Gilbane provided Commercial One with Urban Grid's bond in the amount of $55,491.00 with Fidelity and Deposit Company of Maryland a/k/a Zurich North America as Surety. Exhibit 19, Urban Grid Payment Bond with Zurich North American.

70.    Gilbane did not provide a copy of Gilbane's payment bond with Travelers or Trane's payment bond with SAFECO.

71.    Gilbane provided the wrong payment bond for Urban Grid which did not cover the work done by Commercial One on the Project.

72.    Gilbane did not ever provide Commercial One with the payment bond issued by Lexon Ins that covered the work done by Commercial One; however, Commercial One received the same from Zurich North America as part of its denial of Commercial One's payment bond claim.

73.    Neither Gilbane nor Trane ever provided to Commercial One a copy of Trane's payment bond for the Project.

74.    Gilbane failed to timely provide a copy of its payment bond for the Project, despite having a contractual obligation to provide a payment bond and being requested in a timely manner by Commercial One for the same.

75.    As a subsubsubcontractor on the Project, Commercial One was entitled to claim against Trane, Gilbane, and/or Urban Grid's payment bonds.

76.    To claim against Trane and/or Gilbane's payment bonds, Commercial One must give notice to Trane and/or Gilbane, respectively, within 90 days from the last day in which Commercial One last provided labor or material on the Project.  VA. CODE §2.2-4341 (B) (1950 amended).

77.    When asked, by asking its construction consultant/manager and thus *de facto* or apparent agent, Trane failed to give its payment bond to Commercial One.

78.    When asked on or about June 29, 2012, Gilbane failed to give its payment bond

17

and Trane's payment bond to Commercial One.

79.     Yet, Gilbane acknowledged Commercial One's request.  Exhibit 18, Gilbane E-Mail Confirmation of Receipt.

80.     When asked, Gilbane gave the wrong payment bond of Urban Grid to Commercial One.

81.     Commercial One believes and therefore alleges that Trane deprived it of its contractual rights under *42 U.S.C. §1981*, including but not limited to the above acts as well as the following:

   a.     Trane delayed Commercial One and deprived it of its right to seek recovery against Trane's payment bond on the Project by not providing the same to Commercial One at any time itself and through its agents, despite notice it was being sought and/or notice to its *de facto* and/or apparent agent Gilbane, and thereby preventing Commercial One from providing Trane the statutory notice to claim against Trane's payment bond;

   b.     Trane attempted to delay Commercial One in the payment of its monies under the contract to deprive it of the resources necessary to go forward as an ongoing business or to have the time and necessary resources to attempt to secure payment from Trane via its bond or otherwise;

   c.     Trane failed to timely provide documents and/or provided inaccurate or incomplete documents to the Commonwealth of Virginia under its contract for the Project which deprived the Commonwealth of Virginia from monthly overview of the contracts awarded, work performed, and payments

made to small, minority owned businesses such as Commercial One;

d.   Trane failed to timely provide and/or provided documents which it knew or should have known were inaccurate at the time of submission to the Commonwealth of Virginia including but not limited to the Affidavit of Payment of Claims, knowing full well that Commercial One was not paid as it claimed and satisfactory arrangements to pay Commercial One had not been made;

e.   Trane failed to provide a timely Affidavit of Payment of Claims, Form CO-13, receiving payment, upon information and belief, in full by the Commonwealth of Virginia despite not paying a subcontractor as defined by its contract with the Commonwealth of Virginia, namely Commercial One, a minority owned contractor; and

f.   Trane failed to provide its payment bond for the Project to Commercial One despite notice to its *de facto* and/or apparent agent, Gilbane and knowing or should have known that Commercial One claimed it was not paid in full.

82.   Commercial One states that Trane and its agent Gilbane, for itself and as agent for Trane, engaged in the above acts because Commercial One is a small, African American contractor, as well as including but not limited to the following:

a.   Commercial One installed the compression fittings and EMT in accordance with Submittals approved by Moseley Architects, Project Engineer for Trane and Gilbane;

b.   On or about February 20, 2012, Gilbane stated that the compression fittings

19

and EMT were not code compliant despite the Submittals;

c.  On February 20, 2012, Commercial One stated to Urban Grid that it installed the materials as approved by Moseley Architects, the Project Engineer for Trane and Gilbane, Exhibit 20, E-Mail from Gilbane regarding Code Issues and Commercial One's Response of February 20, 2012;

d.  On or about February 23, 2012, Urban Grid sent an e-mail to Moseley Architects who approved compression fittings 659RT and 669RT, wherein RT refers to "rain tight," Exhibit 21, Urban Grid to Moseley Architects' Approval of Rain Tight Fittings and Submittals;

e.  On or about February 22, 2012, Urban Grid requested that Commercial One remove the installed, approved compression fittings to "rain tight" couplings, noting the EMT had been accepted by the Commonwealth of Virginia; Exhibit 22, Urban Grid Demand and Commercial One Response of February 22/23, 2012;

f.  On February 22, 2012, Moseley Architects issued a field clarification asking for compression fittings not as it approved in the Submittal and not as approved to Urban Grid in its submittals to Moseley Architects, but instead watertight compression fittings, thereby changing the contract after acceptance and performance by Commercial One, Exhibit 11, Field Clarification;

g.  Moseley Architects incorrectly specified the EMT which was subsequently accepted by the Commonwealth of Virginia; incorrectly specified the

20

compression fittings twice despite approving submittals for the same;

h.     Trane through its *de facto* and/or apparent agent Gilbane, who acted on behalf of itself and Trane, changed the specifications of the Project to watertight compression fittings despite approved Submittals and required that Commercial One install the same even though it required rework, additional work, and additional supplies; and

i.     Upon information and belief, Trane ensured payment or agreed resolution to all subcontractors and materialman on the Project except Commercial One - the small, African American contractor who performed in accordance with its contracts and then had the same unilaterally changed by Trane's Project Engineer, Moseley Architects, due to Moseley Architects' errors and as demanded by Gilbane, on behalf of itself and Trane.

83.     Commercial One believes and therefore states that Trane acted with an intent to discriminate against Commercial One, a small, African American contractor, including but not limited to the above acts.

84.     Commercial One believes and therefore states that Trane retaliated against it due to Commercial One's following contractual procedures and being shown up by a small, African American subcontractor concerning specification and building code issues when compared to Trane's documented and demonstrated inability to specify the appropriate materials to be used on the Project not once but twice.

85.     Commercial One believes and therefore states that Trane retaliated against it because Commercial One exercised its First Amendment rights of speech and association by

21

contacting the Office of the Governor, Director of Supplier Diversity for the Commonwealth of Virginia to seek assistance from the same regarding communication and/or as a *de facto* ombudsman.

86.     Commercial One believes and therefore states that Trane acted with intent to discriminate against Commercial One, a small, African American contractor including but not limited to the following:

   a.    Trane intended to take advantage of the lack of sophistication and/or experience of Commercial One, a small, African American contractor on the Project and deprive it of payment upon its contract;

   b.    Trane intended to take advantage of Commercial One by failing to give over its payment bond;

   c.    Trane intended to take advantage of Commercial One by allowing Gilbane to not provide a copy of its payment bond to Commercial One even though Gilbane was the project and/or construction manager, *de facto* agent, and/or apparent agent of Trane;

   d.    Trane discriminated against Commercial One as an African American company to deprive it of the benefits of its rights under contract to include but not be limited to seeking recovery under Trane's payment bond, benefit of the payment provisions that Trane had with the Commonwealth of Virginia to be present in Commercial One's contract as well, failure to provide notice to the Commonwealth of Virginia of progress of its payments to SWaM businesses such as Commercial One, failure to file a

22

timely and/or fully accurate Affidavit of Payment of Claims such that Trane indicated that the only subcontractor not being paid was Commercial One, failing to provide a list of subcontractors and materialmen not being paid as claimed by them to allow the Commonwealth of Virginia to withhold payment from Trane to ensure payment of subcontractors and/or materialmen;

e.   Trane by and through its subcontractors failed to provide sufficient notice why any monies were withheld from Commercial One; and

f.   Trane by and through its subcontractors failed to pay only Commercial One, believed to be the only African American subcontractor and/or materialman on the Project.

87.   As the direct and proximate result of Trane's discriminatory acts based upon Commercial One being a small, African American subsubsubcontractor on the Project and denial of rights to contract to Commercial One, including but not limited to the above, Commercial One has been injured and damaged, including but not limited to violations of *42 U.S.C. §1981.*

## Count 2 - 42 U.S.C. §1981 - Gilbane Building Company

88.   Commercial One incorporates paragraphs 1-42, 44-46, 49-56, 58 and 81 as if fully set forth herein.

89.   Gilbane intentionally discriminated against Commercial One based on race, including without limitation the following regarding Commercial One, its status as a SWaM, an African American owned company, and/or African American company.

90.   Gilbane's discrimination interfered with Commercial One's right to contract as

secured by *42 U.S.C. §1981.*

91.     Gilbane was responsible for the construction management for Trane, i.e. administration of Trane's contract with the Commonwealth of Virginia and management of all phases of the construction process.

92.     Trane required and Gilbane provided a performance bond to secure its performance as construction manager/consultant for Trane for the benefit of lower tier subcontractors and materialmen on the Project.

93.     Upon information and belief, Gilbane was responsible for the day to day construction and contract management including without limitation securing information for Trane's contract compliance with the Commonwealth of Virginia.

94.     Gilbane requested from Commercial One its status as a small, minority, i.e. African American, owned business on or about March 22, 2012, to which Commercial One responded on the same day. Exhibit 23, Gilbane Request and Commercial One Response regarding SWaM status.

95.     Neither Gilbane nor Trane communicated this information to the Commonwealth of Virginia despite Trane's contractual requirements to do the same. Exhibit 13, Commonwealth of Virginia Response to Freedom of Information Act Request.

96.     Commercial One states that Gilbane for itself, and as agent of Trane, decided to attempt to offload the costs for its project engineer/architects' error onto Urban Grid and thus Commercial One by entering into a settlement agreement with Urban Grid for payment on Urban Grid's contract without allowing for additional change orders for the field clarification, knowing that Urban Grid would not pay Commercial One for Commercial One's labor and/or material used

to perform said field clarification.

97.    Upon information and belief, Gilbane wrongly believed that settlement between Gilbane and Urban Grid somehow obviated Trane's obligations to report to the Commonwealth of Virginia on its Affidavit of Payment of Claims form and/or list of unpaid claims that Commercial One was not paid in full as claimed by them.

98.    Commercial One believes and therefore alleges that Gilbane deprived it of its contractual rights under *42 U.S.C. §1981*, including but not limited to the above acts as well as the following:

        a.    Gilbane delayed Commercial One and deprived it of its right to seek recovery against Trane's payment bond on the Project by not providing the same to Commercial One at any time, despite notice it was being sought, and thereby preventing Commercial One from providing Trane the statutory notice to claim against Trane's payment bond;

        b.    Gilbane delayed Commercial One and deprived it of its right, except as requested herein, to seek recovery against Gilbane's payment bond on the Project by not providing the same to Commercial One when requested and thereby preventing Commercial One from providing it the statutory notice to claim against Gilbane's payment bond; and/or

        c.    Gilbane delayed Commercial One in the payment of its monies under the contract to deprive it of the resources necessary to go forward as an ongoing business or to have the time and necessary resources to attempt to secure payment from Trane, Gilbane, and/or Urban Grid Solar via its bond

25

or otherwise.

99. Commercial One believes and therefore states that Gilbane acted with an intent to discriminate against Commercial One, a small, African American contractor, including but not limited to the above acts.

100. Commercial One believes and therefore states that Gilbane retaliated against it due to Commercial One's following contractual procedures and thus Gilbane being shown up by a small, African American subcontractor concerning specification and building code issues when compared to Gilbane and thus Trane's documented and demonstrated inability to specify the appropriate materials to be used on the Project not once but twice.

101. Commercial One believes and therefore states that Gilbane retaliated against it because Commercial One exercised its First Amendment rights of speech and association by contacting the Office of the Governor, Director of Supplier Diversity for the Commonwealth of Virginia to seek assistance form the same regarding communication and/or as a *de facto* ombudsman.

102. Commercial One believes and therefore states that Gilbane acted with intent to discriminate against Commercial One, a small, African American contractor including but not limited to the following:

      a.    Gilbane intended to take advantage of the lack of sophistication and/or experience of Commercial One, a small, African American contractor on the Project and deprive it of payment upon its contract;

      b.    Gilbane intended to take advantage of Commercial One by failing to give over its payment bond when requested to do the same;

c.     Gilbane knew or should have known of the improper 70 day Final Payment

provision in the Urban Grid-Commercial One contract thereby knowing or

being charged with knowing that any delay in turning over its bond would

prevent Commercial One from providing notice to claim upon its payment

bond; and

d.     Gilbane discriminated against it as an African American company to

deprive it of the benefits of its rights under contract to include but not be

limited to seeking recovery under Trane's payment bond, and/or seek

recovery from Gilbane under Gilbane's payment bond.

103.   As the direct and proximate result of Gilbane's discriminatory acts based upon

Commercial One being a small, African American subsubsubcontractor on the Project and denial

of rights to contract to Commercial One, including but not limited to the above, Commercial One

has been injured and damaged, including but not limited to violations of *42 U.S.C. §1981.*

### Count 3 - 42 U.S.C. §1981 - Urban Grid Solar, Inc.

104.   Commercial One incorporates paragraphs 1-42, 44-46, 53-55, 57-60, 62-64, 75,

and 81, as if fully set forth herein.

105.   Urban Grid intentionally discriminated against Commercial One based on race,

including without limitation the following regarding Commercial One, its status as a SWaM, an

African American owned company, and/or African American company.

106.   Urban Grid's discrimination interfered with Commercial One's right to contract as

secured by *42 U.S.C. §1981.*

107.   As a lower tier subcontractor and materialman to Trane, Commercial One as a

small, minority owned subcontractor was entitled to the benefit of contractual provisions being

present in any and all contracts on the Project, including but not limited to the contract between

Urban Grid and Commercial One, including but not limited to the provision that upon Trane's

receipt of payment, Commercial One would be paid within seven (7) days or notified within seven

(7) days why payment was not being made to it by Urban Grid. Exhibit 1, General Conditions of

the Design Build Contract §37.

108.    Commercial One states that as a SWaM on the Project and a Subcontractor as well

as Supplier of Materials that it is a third party beneficiary of any and all contract provisions

between Trane and the Commonwealth of Virginia, including but not limited to having benefits

expressly conferred upon it including without limitation the following:

  a.    Requirement that payment provisions between the Commonwealth and

        Trane likewise be between Trane and all subcontractors, Exhibit1,

        Comprehensive General Agreement, General Conditions of the Design

        Build Contract ¶¶3(f) & 37; and

  b.    Requirement of a payment bond for the benefit of subcontractors such as

        Commercial One, Exh1, Comprehensive General Agreement, General

        Conditions of the Design Build Contract ¶ 8(b).

109.    Upon information and belief, Urban Grid did not intend to pay Commercial One

when executing the Settlement Agreement and General Waiver and Release with Gilbane on or

about May 18, 2012. Exhibit 15, Settlement & Exhibit 16, Urban Grid General Release &

Waiver.

110.    At all times relevant herein, Urban Grid knew that it owed Commercial One

monies for its work on the Project.

111.    Commercial One states that Urban Grid  engaged in the above acts because
Commercial One is a small, African American contractor, as well as including but not limited to
the following:

> a.    Commercial One installed the compression fittings and EMT in accordance
> with Submittals approved by Moseley Architects, Project Engineer for
> Trane and Gilbane;
>
> b.    On or about February 20, 2012, Gilbane stated that the compression fittings
> and EMT were not code compliant despite the Submittals;
>
> c.    On February 20, 2012, Commercial One stated to Urban Grid that it
> installed the materials as approved by Moseley Architects, the Project
> Engineer for Trane and Gilbane, Exhibit 20, E-Mail from Gilbane regarding
> Code Issues and Commercial One's Response of February 20, 2012;
>
> d.    On or about February 23, 2012, Urban Grid sent an e-mail to Moseley
> Architects who approved compression fittings 659RT and 669RT, wherein
> RT refers to "rain tight," Exhibit 21, Urban Grid to Moseley Architects'
> Approval of Rain Tight Fittings and Submittals;
>
> e.    On or about February 22, 2012, Urban Grid requested that Commercial One
> remove the installed, approved compression fittings to "rain tight"
> couplings, noting the EMT had been accepted by the Commonwealth of
> Virginia; Exhibit 22, Urban Grid Demand and Commercial One Response
> of February 22/23, 2012;

29

f. On February 22, 2012, Moseley Architects issued a field clarification asking for compression fittings not as it approved in the Submittal and not as approved to Urban Grid in its submittals to Moseley Architects, but instead watertight compression fittings, thereby changing the contract after acceptance and performance by Commercial One;

g. Moseley Architects incorrectly specified the EMT which was subsequently accepted by the Commonwealth of Virginia; incorrectly specified the compression fittings twice despite approving submittals for the same;

h. Trane through its *de facto* and apparent agent Gilbane, who acted on behalf of itself and Trane, changed the specifications of the Project to watertight compression fittings despite approved Submittals and required Commercial One through Urban Grid to install the same even though it required rework, additional work, and additional supplies; and

i. Urban Grid did not pay Commercial One for its labor and materials provided to the Project which were due and owing and instead paid itself.

112. Commercial One believes and therefore states that Urban Grid acted with an intent to discriminate against Commercial One, a small, African American contractor, including but not limited to the above acts.

113. Commercial One believes and therefore states that Urban Grid further discriminated against it due to it being a small, African American subcontractor when causing Commercial One to agree to a 70 day Final Payment term when Trane and all of its subcontractors were to include the seven (7) day pay and/or seven (7) day notice provision if not paying in full in

30

all subcontracts for which the Commonwealth of Virginia paid.

114.     Commercial One believes and therefore states that Urban Grid provided this provision to Commercial One to deprive it of a meaningful opportunity to make claims against Trane's payment bond and/or Gilbane's payment bond.

115.     Commercial One believes and therefore states that Urban Grid acted with intent to discriminate against Commercial One, a small, African American contractor including but not limited to the following:

    a.     Urban Grid intended to take advantage of the lack of sophistication and/or experience of Commercial One, a small, African American contractor on the Project and deprive it of payment upon its contract;

    b.     Urban Grid intended to take advantage of Commercial One by including a provision of 70 day Final Payment in contravention of the Commonwealth of Virginia and Trane's contract requiring a seven (7) day pay and/or seven (7) day notice if not paying in full provision in all subcontracts for which the Commonwealth of Virginia paid so that Commercial One would be unable to claim effectively against Trane's payment bond and/or Gilbane's payment bond;

    c.     Urban Grid discriminated against Commercial One as an African American company to deprive it of the benefits of its rights under contract as set forth above;

    d.     Urban Grid failed to pay Commercial One in full as claimed by Commercial One as follows:

i.    Receiving $35,840.81 from Gilbane on the Project on or about may 18, 2012 and paying none of these monies to Commercial One, but upon information and belief paying itself or affiliated companies and/or entities instead in whole or in part with these monies;

ii.    Urban Grid violated Code of Virginia §43-13 (1950 amended) and provided *prima facie* evidence that Urban Grid intended to defraud Commercial One; and

iii.    Urban Grid admitted that it owed Commercial One monies as late as July 25, 2012, Exhibit 24, Urban Grid Admission of Monies Due to Commercial One; and

iv.    Urban Grid failed to pay Commercial One as contracted for its performance of labor and provision of materials.

116.    Urban Grid committed larceny against Commercial One by not paying any monies to Commercial One that were received from Gilbane due to Urban Grid's Settlement and General Release, and paying the same to itself in whole or in part prior to paying all of its subcontractors and/or materialmen, and yet confirming that it owed monies to Commercial One on the project.

117.    Upon information and belief, Urban Grid closed down operations and/or otherwise shifted operations to an affiliated company and/or companies, believed to be Urban Grid Solar, L.L.C., Urban Grid Holdings, L.L.C., Urban Grid Mechanical, L.L.C., and/or some combination thereof.

118.    Urban Grid intentionally discriminated against Commercial One based on its status of being a small, African American subcontractor and denied it benefits of its contracts because of

32

said status including but not limited to as set forth above.

119.    As the direct and proximate result of Urban Grid's discriminatory acts based upon Commercial One being a small, African American subsubsubcontractor on the Project and denial of rights to contract to Commercial One, including but not as limited to the above, Commercial One has been injured and damaged, including but not limited to violations of *42 U.S.C. §1981*.

### Count 4 - Statutory Conspiracy to Injure a Business

120.    Commercial One incorporates paragraphs 1 - 119 as if fully set forth herein.

121.    Upon information and belief, Trane, Gilbane and Urban Grid attempted to procure the participation, cooperation, agreement, and/or other assistance of Trane, Gilbane, Urban Grid, and/or any combination thereof to enter into a combination, association, agreement, mutual understanding and/or concert to willfully and maliciously injure Commercial One in its reputation, trade, and business.

122.    Trane, Gilbane and Urban Grid acted intentionally, purposefully, and without lawful justification when it/they took and attempted to secure the participation, cooperation, agreement, and/or other assistance with the above stated actions against Commercial One.

123.    Upon information and belief, Trane, Gilbane, Urban Grid and/or any combination thereof combined, associated, agreed, mutually undertook and/or acted in concert together for the purpose of willfully and maliciously injuring Commercial One in its reputation, trade, and/or business.

124.    Upon information and belief, Trane, Gilbane, Urban Grid and/or any combination thereof succeeded with its/their efforts causing injuries including but not limited to Commercial One not being paid in full for its labor and materials incorporated into the Project and as claimed

33

by it, Commercial One being discriminated against due to being a small, African American contractor, failing to provide the benefits of contract to Commercial One due to said racial discrimination, preventing claims against the payment bonds of Trane and Gilbane by intentional delay as shown by an improper contract provision as well as failure to provide payment bonds when requested by Commercial One, Urban Grid settling and Trane and Gilbane using said settlement to secure payment from the Commonwealth of Virginia when Commercial One had not been paid the amounts as it claimed were due, failing to provide information to the Commonwealth of Virginia to allow it to both monitor SWaM participation such as Commercial One's in the Project and to preserve Commercial One's claims, Urban Grid committing fraud by non-payment of Commercial One from monies paid by Gilbane, and instead paying itself in whole or in part with these monies prior to paying Commercial One, thereby committing *prima facie* fraud evidencing larceny by Urban Grid.

125. Upon information and belief, by reason of the aforesaid actions of Trane, Gilbane, Urban Grid and/or any combination thereof and their violation of *Code of Virginia §18.2-499 (1950 amended) et seq.* , Commercial One was injured in its reputation, trade, and business.

126. By reason of the aforesaid actions of Trane, Gilbane, Urban Grid and/or any combination thereof and their violation of *Code of Virginia §18.2-499 (1950 amended)*, Commercial One has hired attorneys to remedy these wrongs, and agreed to pay a blended fee to said counsel as well as to cover all necessary expenses and costs.

### Count 5 - Breach of Contract Urban Grid Solar - 14th Street Parking Deck

127. Commercial One incorporates paragraphs 1-42, 58-60 and 115(d) as if fully set forth herein.

34

128. On or before Commercial One supplied labor or provided materials to the Project, Urban Grid and Commercial One entered into a contract for work to be performed at the 14th Street Parking Deck portion of the Project. Exhibit 8, Urban Grid - Commercial One Contract - 14th Street Parking Deck.

129. Pursuant to the terms of said contract, Commercial One provided labor and supplied materials to the Project.

130. Commercial One duly made demand upon Urban Grid for payment for the labor and materials provided. *Id.* Exhibit 25, Invoices, Exhibit 17, Commercial One Demand for Payment and Bonds.

131. Urban Grid requested and Commercial One provided labor and/or supplied materials which were not contemplated by the original contract and for which Commercial One provided change orders. Exhibit 12, Change Orders.

132. Urban Grid has failed, without just cause, to make payment pursuant to the contract and change orders.

133. Commercial One is owed $243,971.24 plus interest due from April 12, 2012 from Urban Grid for both contracts on 14th Street and VDC and as set forth in the accounting and affidavit attached hereto as Exhibit 26, Accounting and Affidavit of Commercial One.

134. Urban Grid by and through its agents breached its contract for the 14th Street Parking Deck with Commercial One including but not limited as set forth above.

135. As an ordinary and natural result of Urban Grid's breaches of contract and/or special circumstances arising within the contemplation of Commercial One and Urban Grid at the time of contract and as set forth above, Commercial One suffered and continues to suffer injuries

35

and harm, including without limitation the monies received for these deliveries.

### Count 6 - Breach of Contract Urban Grid Solar - VDC

136.    Commercial One incorporates paragraphs 1 - 42, 58-60 and 115(d) as if fully set forth herein.

137.    On or before Commercial One supplied labor or provided materials to the Project, Urban Grid and Commercial One entered into a contract for work to be performed at the VDC portion of the Project. Exhibit 9, Urban Grid - Commercial One Contract - VDC.

138.    Pursuant to the terms of said contract, Commercial One provided labor and supplied materials to the Project.

139.    Commercial One duly made demand upon Urban Grid for payment for the labor and materials provided. Exhibit 25, Invoices, Exhibit 17, Commercial One Demand for Payment and Bonds.

140.    Urban Grid requested and Commercial One provided labor and/or supplied materials which were not contemplated by the original contract and for which Commercial One provided change orders. Exhibit 12, Change Orders.

141.    Urban Grid has failed, without just cause, to make payment pursuant to the contract and change orders.

142.    Commercial One is owed $243,971.24 plus interest due from April 12, 2012 from Urban Grid for both contracts on 14th Street and VDC and as set forth in the accounting and affidavit attached hereto as Exhibit 26.

143.    Urban Grid by and through its agents breached its contract for the VDC with Commercial One including but not limited as set forth above.

36

144.    As an ordinary and natural result of Urban Grid's breaches of contract and/or special circumstances arising within the contemplation of Commercial One and Urban Grid at the time of contract and as set forth above, Commercial One suffered and continues to suffer injuries and harm, including without limitation the monies received for these deliveries.

### Count 7 - Payment Bond Claim - Lexon Insurance Co.

145.    Commercial One incorporates paragraphs 1-42 and 127-144 as if fully set forth herein.

146.    Upon information and belief, Lexon Ins is engaged in the business of issuing surety bonds and is authorized to issue bonds in the Commonwealth of Virginia.

147.    Urban Grid as principal and Lexon Ins as surety, issued a payment bond to secure payment of subcontractors providing labor and/or materials to Urban Grid in connection with work on the Project and in particular the 14th Street and VDC portions of the Project. Exhibit 6, Lexon Ins Payment Bond.

148.    The Project for which Lexon Ins payment bond was issued is a public project within the meaning of the Virginia Little Miller Act.

149.    Commercial One is a proper claimant on Lexon Ins' Payment bond.

150.    Commercial One has satisfied all notice requirements, if any, for this claim and all conditions precedent to the bringing of this cause of action.

151.    All labor provided and materials supplied by Commercial One were furnished to the Project and payment for the work and materials is now due.

152.    Commercial One filed this action within the time required by law and within one (1) year of the furnishing of its last labor or material.

37

153.    Pursuant to the terms of the bond, Urban Grid and Lexon Ins are jointly and severally liable to Commercial One for $243,971.24 plus interest due from April 12, 2012 as well as costs.

### Count 8 - Payment Bond Claim -
### Travelers Casualty and Surety Company of America

154.    Commercial One incorporates paragraphs 1- 42, 58-60, 62-70, 73-75, 77-79 and 127-144 as if fully set forth herein.

155.    Upon information and belief, Travelers is engaged in the business of issuing surety bonds and is authorized to issue bonds in the Commonwealth of Virginia.

156.    Gilbane as principal and Travelers as surety, issued a payment bond to secure payment of subcontractors providing labor and/or materials to Gilbane directly or by and through its subcontractors to include but not be limited to  Urban Grid in connection with work on the Project.  Exhibit 5, Travelers Payment Bond.

157.    The Project for which Travelers Payment bond was issued is a public project within the meaning of the Virginia Little Miller Act.

158.    Commercial One is a proper claimant on Travelers' Payment bond.

159.    Commercial One has satisfied all notice requirements, if any, for this claim and all conditions precedent to the bringing of this cause of action.

160.    In the alternative, to the extent Gilbane and/or Travelers claims that Commercial One failed to satisfy all notice requirements, then Commercial One states that it substantially complied with the notice requirements, Gilbane received actual notice as it acknowledged, and the Virginia Little Miller Act and notices required are remedial statutes which should be read to allow

for a remedy to Commercial One.

161.    In the second alternative, to the extent Gilbane and/or Travelers claims that Commercial One failed to satisfy all notice requirements, then Commercial One states that both Gilbane and Travelers should be equitably estopped from asserting this position due to deceptive acts taken by Gilbane as set forth above.

162.    All labor provided and materials supplied by Commercial One were furnished to the Project and payment for the work and materials is now due.

163.    Commercial One filed this action within the time required by law and within one (1) year of the furnishing of its last labor or material.

164.    Pursuant to the terms of the bond, Gilbane and Travelers are jointly and severally liable to Commercial One for $243,971.24 plus interest due from April 12, 2012 as well as costs.

WHEREFORE, Commercial One Electrical Contractors, Inc., plaintiff, prays for judgment against Trane U.S. Inc., Gilbane Building Company of Rhode Island t/a Gilbane Building Co., Travelers Casualty and Surety Company of America, Urban Grid Solar, Inc., and Lexon Insurance Company, the Defendants, as follows:

A.    Declaring that Trane U.S. Inc.'s acts violated Commercial One Electrical Contractors, Inc.'s rights under *42 U.S.C. §1981* and award judgment for such damages as are proper for Commercial One Electrical Contractors, Inc. in amount not less than $1,244,233.00 for compensatory damages and punitive damages not less than $3,732, 740.00 and against Trane U.S. Inc.;

B.    Declaring that Gilbane Building Company of Rhode Island t/a Gilbane Building Co.'s acts violated Commercial One Electrical Contractors, Inc.'s rights under *42 U.S.C. §1981*

and award judgement for such damages as are proper for Commercial One Electrical Contractors, Inc. in amount not less than $1,244,233.00 for compensatory damages and punitive damages not less than $3,732, 740.00 and against Gilbane Building Company of Rhode Island t/a Gilbane Building Co.;

     C.     Declaring that Urban Grid Solar, Inc.'s acts violated Commercial One Electrical Contractors, Inc.'s rights under *42 U.S.C. §1981* and award judgment for such damages as are proper for Commercial One Electrical Contractors, Inc. in amount not less than $1,244,233.00 for compensatory damages and punitive damages not less than $3,732, 740.00 and against Urban Grid Solar, Inc.;

     D.     Awarding Commercial One Electrical Contractors, Inc. judgment for its costs, attorneys' fees, expert witness fees and any other amounts as allowed under *42 U.S.C. §1988* and/or at the common law from Trane U.S., Inc., Gilbane Building Company of Rhode Island t/a Gilbane Building Co., and/or Urban Grid Solar, Inc.;

     E.     Awarding judgment for Commercial One Electrical Contractors, Inc. in the amount of $731,913.72 as its damages trebled as well as its attorneys fees, costs and any other amounts as allowed under *Code of Virginia §18.2-499 et seq. (1950 amended)* against Trane U.S., Inc., Gilbane Building Company of Rhode Island t/a Gilbane Building Co., and Urban Grid Solar, Inc., jointly and severally;

     F.     Awarding judgment for Commercial One Electrical Contractors, Inc. in the amount of $243,971.24 plus pre-judgment and post-judgment interest for breach(es) of contract against Urban Grid Solar, Inc.;

     G.     Awarding judgment for Commercial One Electrical Contractors, Inc. in the amount

of $243,971.24 plus pre-judgment and post-judgment interest against Travelers Casualty and Surety Company of America for its claim upon Travelers Casualty and Surety Company of America's payment bond;

H.     Awarding judgment for Commercial One Electrical Contractors, Inc. in the amount of $243,971.24 plus pre-judgment and post-judgment interest against Lexon Insurance Company; for its claim upon Lexon Insurance Company's payment bond;

I.     Commercial One Electrical Contractors, Inc. seeks but one recovery based upon breach of contract and/or claims against payment bonds but asks the Court to hold all defendants responsible and enter judgment against the same until it such time as it is paid in full or said judgments are satisfied by payment to Commercial One Electrical Contractors, Inc.; and

J.     Awarding Commercial One Electrical Contractors, Inc. such other and further and general relief as the nature of the case may require and to equity may seem meet.

## JURY DEMAND

Trial by jury is demanded.

Respectfully submitted,
COMMERCIAL ONE ELECTRICAL
CONTRACTORS, INC.

BY:_____

Of Counsel

Darren Marshall Hart, VSB# 36794
HART & ASSOC., PC
9025 Forest Hill Ave, First Floor
Richmond, VA 23235
(804) 673-9339
(804) 673-9969 facsimile
Info@Richmond-Law.com